UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

RAMIN SARIASLAN,        )
                        )
    Petitioner,         )   CASE NO. 2:07-cv-00501-RSL-JLW
                        )
    v.                  )
                        )
THOMAS L. CAREY,        )   REPORT AND RECOMMENDATION
                        )
    Respondent.         )
_____)

I.  SUMMARY

Petitioner Ramin Sariaslan is currently incarcerated at the California State Prison -- Solano, in Vacaville, California. He was convicted by a jury of second degree murder in Marin County Superior Court on December 18, 1984, and sentenced to 15-years-to-life with the possibility of parole. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2004 denial of parole by the Board of Parole Hearings of the State of California (the "Board").[1] Respondent has filed an answer to the petition together with relevant portions of the state court record, and petitioner has filed a traverse in response to the

---

[1] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1, 2005. *See* California Penal Code § 5075(a).

answer. The briefing is now complete and this matter is ripe for review. The Court, having thoroughly reviewed the record and briefing of the parties, recommends the petition be denied and this action be dismissed with prejudice.

II. BACKGROUND

In February 1984, when petitioner was nineteen years old, he killed his mother by striking her, rendering her unconscious either immediately or when she hit her head as she fell, and then hog-tying her with a telephone cord around her hands, ankles, and neck. (*See* Docket 1, Exhibit 1 at 13.) She either died instantly, or strangled herself to death with the pull of the cord from her ankles to her neck when she could no longer hold up her legs. (*See id*.) When petitioner was taken into police custody, he was in possession of his mother's credit cards, checks, car, and apartment keys. (*Id*. at 14.) Petitioner was convicted by a jury of second degree murder in Marin County Superior Court on December 18, 1984, and sentenced to 15-years-to-life with the possibility of parole. His minimum eligible parole date was April 19, 1994. Thus, he has been incarcerated for the past twenty-five years.

The parole denial which is the subject of this petition took place after a hearing on June 29, 2004. It was petitioner's fourth application. The previous applications were also denied. After denial of this application, petitioner filed habeas corpus petitions in the Marin County Superior Court, California Court of Appeal, and California Supreme Court. Those petitions were unsuccessful. This federal habeas petition followed. Petitioner contends his 2004 denial by the Board violated his Fifth and Fourteenth Amendment Due Process rights. Thus, petitioner does not challenge the validity of his conviction, but instead challenges the Board's 2004 decision finding him unsuitable for parole.

### III. STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this petition because it was filed after the enactment of AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997). Because petitioner is in custody of the California Department of Corrections pursuant to a state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition. *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert. denied*, 543 U.S. 991 (2004) (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the petitioner is not challenging his underlying state court conviction."). Under AEDPA, a habeas petition may not be granted with respect to any claim adjudicated on the merits in state court unless petitioner demonstrates that the highest state court decision rejecting his petition was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1) and (2).

As a threshold matter, this Court must ascertain whether relevant federal law was "clearly established" at the time of the state court's decision. To make this determination, the Court may only consider the holdings, as opposed to dicta, of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000). In this context, Ninth Circuit precedent remains persuasive but not binding authority. *See id.* at 412-13; *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

The Court must then determine whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *See Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 412-13. "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. At all times, a federal habeas court must keep in mind that it "may not issue the writ simply because [it] concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be [objectively] unreasonable." *Id.* at 411.

In each case, the petitioner has the burden of establishing that the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law. *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996). To determine whether the petitioner has met this burden, a federal habeas court looks to the last reasoned state court decision because subsequent unexplained orders upholding that judgment are presumed to rest upon the same ground. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).

Finally, AEDPA requires federal courts to give considerable deference to state court decisions, and state courts' factual findings are presumed correct. *See* 28 U.S.C. § 2254(e)(1).

01 Federal courts are also bound by a state's interpretation of its own laws. *See Murtishaw v.*
02 *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713
03 (9th Cir. 1993)).

    IV.    FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

    A.    *Due Process Right to be Released on Parole*

Under the Fifth and Fourteenth Amendments to the United States Constitution, the government is prohibited from depriving an inmate of life, liberty or property without the due process of law. U.S. Const. amends. V, XIV. A prisoner's due process claim must be analyzed in two steps: the first asks whether the state has interfered with a constitutionally protected liberty or property interest of the prisoner, and the second asks whether the procedures accompanying that interference were constitutionally sufficient. *Ky. Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d 1123, 1127 (9th Cir. 2006).

Accordingly, our first inquiry is whether petitioner has a constitutionally protected liberty interest in parole. The Supreme Court articulated the governing rule in this area in *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482 U.S. 369 (1987). *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying "the 'clearly established' framework of *Greenholtz* and *Allen"* to California's parole scheme). The Court in *Greenholtz* determined that although there is no constitutional right to be conditionally released on parole, if a state's statutory scheme employs mandatory language that creates a presumption that parole release will be granted if certain designated findings are

made, the statute gives rise to a constitutional liberty interest. *See Greenholtz*, 442 U.S. at 7, 12; *Allen*, 482 U.S. at 377-78.

As discussed *infra*, California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole authority, he "will pose an unreasonable risk of danger to society if released from prison." Title 15 Cal. Code Regs., § 2402(a). The Ninth Circuit has therefore held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902. To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held that California Penal Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." This "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). *See also Sass*, 461 F.3d at 1127.

Because the Board's denial of parole interfered with petitioner's constitutionally-protected liberty interest, this Court must proceed to the second step in the procedural due process analysis and determine whether the procedures accompanying that interference were constitutionally sufficient. "[T]he Supreme Court [has] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)). The "some evidence" standard requires this

made, the statute gives rise to a constitutional liberty interest. *See Greenholtz*, 442 U.S. at 7, 12; *Allen*, 482 U.S. at 377-78.

As discussed *infra*, California statutes and regulations afford a prisoner serving an indeterminate life sentence an expectation of parole unless, in the judgment of the parole authority, he "will pose an unreasonable risk of danger to society if released from prison." Title 15 Cal. Code Regs., § 2402(a). The Ninth Circuit has therefore held that "California's parole scheme gives rise to a cognizable liberty interest in release on parole." *McQuillion*, 306 F.3d at 902. To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held that California Penal Code § 3041 vests all "prisoners whose sentences provide for the possibility of parole with a constitutionally protected liberty interest in the receipt of a parole release date, a liberty interest that is protected by the procedural safeguards of the Due Process Clause." This "liberty interest is created, not upon the grant of a parole date, but upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003). *See also Sass*, 461 F.3d at 1127.

Because the Board's denial of parole interfered with petitioner's constitutionally-protected liberty interest, this Court must proceed to the second step in the procedural due process analysis and determine whether the procedures accompanying that interference were constitutionally sufficient. "[T]he Supreme Court [has] clearly established that a parole board's decision deprives a prisoner of due process with respect to this interest if the board's decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard applies in prison disciplinary proceedings)). The "some evidence" standard requires this

Court to determine "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56. Although *Hill* involved the accumulation of good time credits rather than release on parole, later cases have held that the same constitutional principles apply in the parole context because both situations directly affect the duration of the prison term. *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d 1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme Court in *Hill* in the parole context); *Sass*, 461 F.3d at 1128-29 (holding the same); *Biggs*, 334 F.3d at 915 (holding the same); *McQuillion*, 306 F.3d at 904 (holding the same).

"The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact," however. *Hill*, 472 U.S. at 456. Similarly, the "some evidence" standard is not an invitation to examine the entire record, independently assess witnesses' credibility, or re-weigh the evidence. *Id.* at 455. Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed. *See id.* at 454. The Court in *Hill* added an exclamation point to the limited scope of federal habeas review when it upheld the finding of the prison administrators despite the Court's characterization of the supporting evidence as "meager." *See id.* at 457.

B. *California's Statutory and Regulatory Scheme*

In order to determine whether "some evidence" supported the Board's decision with respect to petitioner, this Court must consider the California statutes and regulations that govern the Board's decision-making. *See Biggs*, 334 F.3d at 915. Under California law, the Board is authorized to set release dates and grant parole for inmates with indeterminate sentences. *See* Cal. Penal Code § 3040 and 5075, *et seq*. Section 3041(a) requires the Board

to meet with each inmate one year before the expiration of his minimum sentence and normally set a release date in a manner that will provide uniform terms for offenses of similar gravity and magnitude with respect to their threat to the public, as well as comply with applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release date "unless it determines that the gravity of current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration." *Id.*, § 3041(b).  Pursuant to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release dates" which take into account the number of victims of the offense as well as other factors in mitigation or aggravation of the crime.  The Board has therefore promulgated regulations setting forth the guidelines it must follow when determining parole suitability.  *See* 15 CCR § 2402, *et seq*.

Accordingly, the Board is guided by the following regulations in making a determination whether a prisoner is suitable for parole:

> (a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.
>
> (b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone

> may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

15 CCR § 2402(a) and (b). Subsections (c) and (d) also set forth suitability and unsuitability factors to further assist the Board in analyzing whether an inmate should be granted parole, although "the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel." 15 CCR § 2402(c).

In examining its own statutory and regulatory framework, the California Supreme Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is "whether some evidence supports the *decision* of the Board … that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings." *Id.*, 44 Cal.4th 1181, 1212 (2008). The court also asserted that the Board's decision must demonstrate "an individualized consideration of the specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the significant circumstance is how those factors interrelate to support a conclusion of current dangerousness to the public." *Id*. at 1204-05, 1212. As long as the evidence underlying the Board's decision has "some indicia of reliability," parole has not been arbitrarily denied. *See Jancsek*, 833 F.2d at 1390. As the California courts have continually noted, the Board's discretion in parole release matters is very broad. *See Lawrence*, 44 Cal.4th at 1204. Thus, the penal code, corresponding regulations, and California law clearly establish that the fundamental consideration in parole decisions is public safety and an assessment of a prisoner's current dangerousness. *See id.*, at 1205-06.

C. *Summary of Governing Principles*

By virtue of California law, petitioner has a constitutional liberty interest in release on parole. The parole authorities may decline to set a parole date only upon a finding that petitioner's release would present an unreasonable present risk of danger to society if he is released from prison. Where the parole authorities deny release, based upon an adverse finding on that issue, the role of a federal habeas court is narrowly limited. It must deny relief if there is "some evidence" in the record to support the parole authority's finding of present dangerousness. The penal code, corresponding regulations, and California law clearly support this definition of the issues.

V. PARTIES' CONTENTIONS

Petitioner contends that the Board violated his state and federal due process rights by finding him unsuitable for parole, and deferring a further application for two years, without some evidence that he poses an unreasonable risk of danger to society if released from prison.[2] (*See* Dkt. 1, at 3-5.) Specifically, petitioner claims there was "[n]o evidence supporting any of the stated reasons for parole denial, and…[n]o reasonable nexus between the facts stated to deny parole and the ultimate conclusion reached." (*Id.*, at 5.) Petitioner argues that the Board failed to consider "many parole unsuitability rules which did not apply," as well as "nearly all the parole suitability rules which applied to petitioner," and contends that the Board failed to give appropriate weight to petitioner's most recent psychological

---

[2] We do not reach petitioner's claim that his state due process rights were violated, as state claims are not cognizable in a federal habeas petition. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (asserting that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

report. (*See id*., at 2, and 7-9; Ex. 2 at 7.) Petitioner also argues that the Board erred by considering law enforcement's opposition to his release on parole, which he claims does not constitute evidence of parole unsuitability. (*See id*., at 15.)

Respondent claims that petitioner does not have a constitutionally protected liberty interest in being released on parole, that the "some evidence" standard is inapplicable in this context, and that even if he does have a protected liberty interest, the Board adequately predicated its denial of parole on "some evidence." (*See* Dkt. 8, 4-5, and 7.) Accordingly, respondent argues that petitioner's due process rights were not violated by the Board's 2004 decision, and the Marin County Superior Court's Order upholding the Board's 2004 parole denial was not an unreasonable application of clearly established federal law. (*See id*. at 5, and 12-13.)

VI. ANALYSIS OF RECORD IN THIS CASE

A. *Analysis*

The Board based its decision that petitioner was unsuitable for parole primarily upon his commitment offense, but also cited his unstable social history, and prior criminality. (*See id*., at 83-85.) *See also* 15 CCR § 2402(b) (requiring the Board to consider a prisoner's "past criminal history"); 15 CCR § 2402(c)(1) (providing that a commitment offense carried out "in an especially heinous, atrocious, or cruel manner" constitutes an unsuitability factor tending to indicate unsuitability); 15 CCR § 2402(c)(3) (providing that a prisoner's "history of unstable or tumultuous relationships with others" constitutes an unsuitability factor tending to indicate unsuitability). After considering all reliable evidence in the record, the Board

concluded that evidence of petitioner's positive behavior in prison did not outweigh evidence of his unsuitability for parole. (*See* Dkt. 1, Ex. 1 at 86.)

With regard to the circumstances of the commitment offense, the Board concluded it was carried out in an especially heinous, atrocious, or cruel manner. (*See id*., at 83-84.) Petitioner struck his mother, rendering her unconscious either immediately or when she hit her head as she fell. (*See id*., at 14.) He then hog-tied her so that she either died instantly, or slowly strangled herself to death on the bathroom floor while he used her credit cards, checks, and car to party in Los Angeles with friends. (*See id*.) Based upon the facts in the record, as well as petitioner's own description of the offense, the Board found that the murder was carried out in a dispassionate and calculated manner, the victim was abused, the offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering, and the motive for the crime was inexplicable in relation to the offense. (*See id*., at 83-84.) *See also* 15 CCR § 2402(c)(1)(B), (C), (D), and (E). The evidence of the circumstances surrounding petitioner's commitment offense and trivial motive provide some evidence to support the Board's finding that the offense was carried out in an especially heinous, atrocious, or cruel manner.

The second unsuitability factor relied upon by the Board was petitioner's unstable social history. (*See* Dkt. 1, Ex. 1 at 83-84.) The Board based its finding upon the record and petitioner's statements during the hearing concerning his family dynamics and strained relationship with his mother. (*See id*., at 14-16, 19, 23-25, 54-55, and 84.) Therefore, there was some evidence to support the Board's finding that petitioner has a history of unstable or tumultuous relationships with others. (*See id*., at 84.)

The third factor cited by the Board to deny parole was petitioner's "prior criminality." (*See id.*, at 83-84.) The applicable guidelines direct the Board to consider all relevant and reliable information, which includes a prisoner's nonviolent criminal history. *See* 15 CCR § 2402(b). As a result, the Board properly considered petitioner's prior $5,000 forgery charge, escalating pattern of criminal conduct, and the fact that petitioner carried out the commitment offense while he was on probation. (*See* Dkt. 1, Ex. 1 at 83-84.) The Board's finding regarding petitioner's prior criminality was therefore supported by some evidence.

Petitioner contends that the Board improperly considered the Twin Cities Police Department and Marin County District Attorney's opposition to parole during the hearing. (*See* Dkt. 1, at 15; Dkt. 1, Ex. 1 at 50-52, 71-75, and 85.) *See also* Cal. Penal Code § 3041.7 (providing that a prosecutor may attend a parole hearing to represent "the interests of the people."). In the absence of other reliable evidence of unsuitability in the record, opposition by law enforcement based upon the nature of the commitment offense does not constitute "some evidence" to support parole denial. *See Rosenkrantz v. Marshall,* 444 F.Supp.2d 1063, 1080 n.14 (C.D. Cal. 2006) (providing that where a district attorney and sheriff's department opposed parole based solely upon the gravity of the commitment offense, their opposition did not constitute "some evidence" because it was "merely cumulative" of the Board's findings regarding the offense). Because the Board relied upon other reliable evidence of petitioner's unsuitability for parole, however, its additional consideration of law enforcement's opposition was not arbitrary and capricious. *See id*.

Contrary to petitioner's argument that the Board failed to consider nearly all the parole suitability rules which favored petitioner, the Board acknowledged the applicability of

two positive suitability factors. Specifically, the Board commended petitioner on his record of good behavior in prison, including a lack of disciplinary violations since August 1995, as well as his efforts toward rehabilitation and training. (*See* Dkt. 1, Ex. 1 at 85-86.) The Board spent a considerable amount of time reviewing petitioner's record and giving petitioner a chance to speak and answer questions. (*See id.*, at 15-70, and 81-82.) The Board also carefully considered petitioner's most recent psychological evaluation, which shows petitioner has made progress while in prison. (*See id.*, at 84-87.) The Board requested a new psychological evaluation, however, due to inconsistencies between the psychologist's description of the commitment offense and petitioner's own statements about the crime during the hearing. (*See id.*, at 87-89.) Thus, it is an inaccurate characterization of the record to say that the Board failed to consider evidence that favored petitioner.

      B.    *State Court Proceedings*

      Petitioner's habeas petitions filed in the California Court of Appeal and California Supreme Court contained the same claims as his Marin County Superior Court petition, and both petitions were summarily denied. (*See* Dkt. 8, Exs. 6-9.) The parties agree that petitioner has properly exhausted his state court remedies, and timely filed the instant petition. (*See* Dkt. 1, at 3; Dkt. 8, at 4.) This Court reviews the Marin County Superior Court's Order upholding the Board's decision to determine whether it meets the deferential AEDPA standards, as it is the last reasoned state court decision. *See Ylst*, 501 U.S. at 803-04.

      In a reasoned decision denying petitioner's request for habeas relief, the Marin County Superior Court asserted that based upon its review of the record, the Board adequately considered "all of the available facts" and demonstrated "appropriate deliberation in coming

REPORT AND RECOMMENDATION -14

to a decision." (*See* Dkt. 1, Ex. 5 at 2.) The court cited the Board's "favorable consideration [of] Petitioner's record in prison and his efforts toward rehabilitation and training," but agreed with the Board that despite petitioner's accomplishments, his "record of achievement [at the time of the hearing] was not yet sufficient to outweigh factors related to the nature of the offense." (*See id*., at 1.) The court concluded that the record amply supported the Board's decision that petitioner posed an unreasonable risk of danger to the public "in view of the cruel and callous nature of the crime," among other reasons. (*Id*., at 2.) Accordingly, the court held that the Board's denial of parole was "not arbitrary or capricious but a rational determination, clearly articulated and supported by substantially more than the 'some evidence' required…." (*Id*., at 2.)

      As stated above, it is beyond the authority of a federal habeas court to determine whether evidence of suitability outweighs the circumstances of the commitment offense, together with any other reliable evidence of unsuitability for parole. The Board has broad discretion to determine how suitability and unsuitability factors interrelate to support its conclusion of current dangerousness to the public. *See Lawrence*, 44 Cal.4th at 1212. Although the Board praised petitioner's good behavior in prison, as well as his vocational and educational progress, it determined that petitioner's commitment offense, unstable social history, and prior criminality indicate that he remains an unreasonable risk of danger to society if released on parole. Because the state court decision upholding the Board's findings satisfies the "some evidence" standard, there is no need to reach respondent's argument that California parole applicants are not entitled to the protection of that standard.

## VII. CONCLUSION

Given the totality of the Board's findings, there is some evidence that petitioner currently poses a threat to public safety, and the Marin County Superior Court's Order upholding the Board's decision was not contrary to, or an unreasonable application of, clearly established federal law, or based on an unreasonable determination of facts. I therefore recommend that the Court find that petitioner's due process rights were not violated, and that it deny his petition and dismiss this action with prejudice.

This Report and Recommendation is submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with this Report and Recommendation, any party may file written objections with this Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Report and Recommendation." Failure to file objections within the specified time may waive the right to appeal the District Court's Order. *See Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). A proposed order accompanies this Report and Recommendation.

DATED this 8th day of May, 2009.

/s/ John L. Weinberg
JOHN L. WEINBERG
United States Magistrate Judge